1

2

3

4

5        IN THE UNITED STATES DISTRICT COURT

6      FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8   BEVERLY DANIEL,                          Case No. 05-cv-0116 LJO TAG

9          Plaintiff,                        FINDINGS AND RECOMMENDATIONS
                                             ON PLAINTIFF'S APPEAL FROM
10       vs.                                 ADMINISTRATIVE DECISION

11  MICHAEL J. ASTRUE,[1]
    Commissioner of Social Security,
12
           Defendant.
13  _____/

14

15        Plaintiff Beverly Daniel ("Claimant" or "Plaintiff") seeks judicial review of an administrative

    decision denying her concurrent claims for disability insurance benefits ("DIB") under Title II of the
16
    Social Security Act ("the Act"), 42 U.S.C. § 401 et seq., and for supplemental security income ("SSI")
17
    under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  (Doc. 1).  Pending before the Court is Claimant's
18
    appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").
19
    Plaintiff filed her complaint on January 19, 2005. (Doc. 1), and her opening brief on October 17, 2005.
20
    (Doc. 18).  The Commissioner filed his opposition on November 21, 2005.  (Doc. 19).  Claimant did not
21
    file a reply brief.
22
                                    **JURISDICTION**
23
          On October 29, 2002, Claimant filed concurrent applications for DIB and SSI.  (Administrative
24
    Record ("AR") 88-90, 272-275).  Claimant reported that she could not work as a result of her
25

26

27  _____

           [1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
28  Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

                                            1

1  fibromyalgia,[2] back pain, depression, and anxiety.  (AR 98, 100).

2        Claimant's applications were denied initially (AR 66, 276) and on reconsideration (AR 67, 277).

3  On December 17, 2003, a hearing was held before Administrative Law Judge ("ALJ") William

4  Thompson.  (AR 27-65).  ALJ Thompson found that Claimant was not disabled in a written decision

5  dated April 2, 2004.  (AR 14-25).  The Appeals Council denied Claimant's request for review on

6  November 16, 2004.  (AR 6-8).  The ALJ's decision, therefore, became the final decision of the

7  Commissioner, which is appealable to the district court. 42 U.S.C. § 405(g).  The initiation of an appeal

8  in the district court must be commenced within sixty (60) days of the Appeal Council's decision.  Id.

9  On January 19, 2005, Claimant timely filed this action.  (Doc. 1).

10  **STATEMENT OF FACTS**

11        The facts relevant to this opinion have been presented in the administrative hearing transcript,

12  the ALJ's decision, and the Claimant's and the Commissioner's briefs, and only will be summarized

13  here.  To the extent necessary, additional facts will be addressed in this Court's analysis.

14        Claimant was born on November 1, 1962, making her 41 years old at the time of both the hearing

15  and the ALJ's decision.  (AR 32, 14-25).  At the hearing, Claimant testified that she completed the

16  eleventh grade. (AR 32).  She added that she attended Modesto Junior College for four years, but did

17  not receive a degree.  (AR 32-33).  Claimant stated that she was separated from her husband and had

18  three children. aged 19 through 23, none of whom lived with her. (AR 33-34).

19        According to her testimony, Claimant earns money caring for her two- and seven-year old

20  grandchildren, for which she is paid by a welfare daycare program. (AR 34-36).  Claimant testified that

21  she receives no additional money, although she had been receiving disability payments, which payments

22  her doctor had stopped approximately one year earlier for reasons unknown to her.  (AR 35-36).

23  Regarding her work history, Claimant testified that she last worked as a manager for a clothing store,

24  earning less than $700 per month.  She stated that she had to stop working in May 2001, after she injured

25                [2] Fibromyalgia is an incurable, chronic condition.  Its most common symptoms are: (1) widespread, persistent

26  muscle, ligament, and tendon pain; (2) pain upon the application of pressure to the back of the head, upper back, neck,
upper chest, elbows, hips, and knees; (3) irritable bowel syndrome; (4) fatigue; (5) headaches and facial pain/stiffness;

27  and (6) heightened sensitivity to odors, touch, bright lights, and noises.  A combination of treatments, including
medication, regular exercise, and a healthy lifestyle, plus involvement in a support group and/or therapy if necessary, can

28  be very effective in minimizing the symptoms.

her back while at work and suffered back pain that prevented her from performing the requirements of the job. Claimant confirmed that, while working at the clothes store, she occasionally lifted 50 pounds, and stood and walked all day. (AR 36-38). In addition, she reported although her back injury was work-related, the clothes store would not allow her to return to her job or provide Workers' Compensation benefits. (AR 48). Claimant testified that her prior jobs included watching a conveyer belt in a winery to ensure that the bottles were not damaged, and working part-time in a school cafeteria. (AR 39-41).

Claimant further testified that she had not attempted to work since May 2001. (AR 36). She reported that her legs, which have knots and become swollen, were her most disabling condition at present. Claimant explained that she never knew whether she would be able to stand up at all, or for how long, and, generally, she has difficulty "getting around" and doing things that she used to do. (AR 42). In response to the ALJ's question regarding medical care for her legs, Claimant stated that she sees Dr. Gupta, a family practitioner, and plans to see a psychiatrist. Claimant added that Dr. Gupta is "keeping her sane, half way" and has written her prescriptions for pain and sleeping pills. (AR 42-43). Claimant informed the ALJ that the pain pills provide relief if she took enough of them, but they also made her itch.[3] (AR 43). With respect to seeing a psychiatrist, Claimant testified that she might need one to ensure that she kept everything in order. She added that she did not think she needed psychiatric care, but thought that "maybe" she should see a psychiatrist for her own sake. (AR 43). Claimant explained that a psychiatrist might help her deal with her physical ailments – especially the symptoms of her fibromyalgia, which Dr. Gupta diagnosed, and her difficulty getting out of bed because of her legs – and thought that, by dealing with the problems now, she would be better equipped to handle the symptoms when they worsened and she could not get out of bed at all. (AR 44, 49). She denied being treated for mental health in the past, but acknowledged that she was taking an antidepressant prescribed by Dr. Gupta, which helped her "deal" with people and criticism. (AR 44-45). Claimant also denied a history of alcohol or drug abuse. (AR 50). When asked to list her problems, Claimant stated that she has (1) difficulty breathing, which requires her to use an inhaler; (2) a depression disorder; (3) problems

---

[3] Claimant, with the ALJ's permission, took the bottle of pain pills out of her purse and reported that the prescribed medication was Ultram. (AR 43). Ultram, or tramadol, is an analgesic used to prevent or treat pain. Itchiness is symptomatic of an allergic reaction to the medication; it is not a side effect.

1   working in the "work society;" and (4) difficulty and/or the inability to walk, pick up boxes, jump, stoop,

2   and run. (AR 46-47). In addition, Claimant stated that she could stand or sit no longer than 30 minutes,

3   and lift 15 pounds but not ½ gallon of milk without dropping it. (AR 49). Claimant further testified that

4   Dr. Gupta treated her when she injured her back, and he never released her to return to work. (AR 47).

5        As to her daily life activities, Claimant testified that she lives by herself in an apartment. (AR

6   34). Claimant stated that she cannot comb her hair or take baths, but she dresses herself with the use of

7   assistive devices that enable her to hold herself up. She added that she rarely ties her shoes. (AR 48).

8   Claimant further testified that her children helped with the housework. (AR 45). Claimant reported that

9   she can fold the laundry in a sitting position and cook, but is not able to take out the trash, scrub the

10  bathtub, or wash the dishes because the latter causes her constant bone and joint pain. Upon further

11  prompting by the ALJ, Claimant added the she could sweep, and had to because of her daycare work,

12  but that she allowed her older granddaughter to sweep when she asked to do so. (AR 45).

13       In response to her attorney's questions, Claimant stated that she receives a total of $600 per

14  month for watching her grandchildren. (AR 51). In addition to the problems she previously identified,

15  Claimant testified that she had problems cooking on the stove because it involved using her hands. She

16  added that her depression causes her to cry frequently and interferes with her concentration and memory.

17  (AR 51-52). Her inability to sit prevents her from attending church as often as she used to, and she no

18  longer sings in the choir. (AR 54-55). Claimant further testified that she feels "stressed out" and her

19  inability to deal with things prevents her from engaging in certain tasks, such as grocery shopping.

20  (AR 53). She then reported that Dr. Gupta had told her that fibromyalgia was incurable. (AR 55).

21       Next, the ALJ called a vocational expert, Susan Cretan Clavel (the "VE"), to testify. (AR 55).

22  First, the VE classified Claimant's jobs, including those in her file, and found that the most of the

23  positions were deemed light work and they varied from unskilled to skilled employment, according to

24  the Dictionary of Occupational Titles ("DOT"). (AR 56). The ALJ asked the VE to consider a 41 year

25  old individual with a high school education, some college classes, the past work history, who was

26  capable of (1) lifting 20 pounds occasionally and 10 pounds frequently, (2) standing and walking six

27  hours daily, (3) sitting without limitation, (4) occasionally bending, stooping, twisting, squatting, and

28  crawling but unable to climb, work at heights, or around hazardous machinery. In addition, the

4

1  individual is limited to work involving relatively simple instructions, one or two stop processes, and

2  little contact with the public and co-workers – that is, the individual should not be expected to form part

3  of a cooperative team or work process. (AR 56-57). The VE noted that the hypothetical would limit the

4  individual to light, unskilled work, and found three separate DOT jobs fit the hypothetical – specifically

5  packing line assembler, with 20,000 positions in California, can filling machine operator, with over

6  18,000 positions in California, and small parts assembly, with over 60,000 positions in the state.

7  (AR 57-58).

8        In the second hypothetical, the only changes were that the individual was restricted to "lifting

9  ten pounds occasionally and small objects throughout the workday [, and s]tanding and walking no more

10 than 30 minutes at a time total, two hours of the day." (AR 58). The VE responded that these

11 restrictions would limit the individual to sedentary, unskilled work, which included lamp shade

12 assembler, table workers, and almond blanchers, with a combined total of 23,000 positions in California.

13 (AR 58). The VE further testified that, at least with respect to all but the almond blancher position,

14 which she had not identified before asserting the following, she made no departures from the DOT, the

15 jobs are performed as she classified them, and her classification is consistent with the DOT's

16 classification. (AR 58-59). In response to the attorney's questions, the VE stated that the number of

17 coworkers close to Claimant would differ depending on the size of the industry and facility, as would

18 the amount of talking amongst the workers. She further testified that not all people can work at the pace

19 required at some of the jobs she identified. (AR 62-63). In closing, the attorney argued that there is no

20 assessment in the record as to Claimant's ability to work at a specified pace within close proximity of

21 coworkers, given her depression, anxiety, and inability to deal with stress. (AR 63-65).

## STANDARD OF REVIEW

23       Congress has provided a limited scope of judicial review of a Commissioner's decision. See,

24 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision, made through an ALJ, when

25 the determination is supported by substantial evidence and there is no legal error. See Ukolov v.

26 Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(quotations and citations omitted); Jones v. Heckler, 760

27 F.2d 993, 995 (9th Cir. 1985); 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla,

28 Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.

McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citing Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Sec'y of Health and Human Serv., 839 F.2d 432, 433 (9th Cir. 1987).

## RELEVANT LEGAL FRAMEWORK

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

///

///

6

1

**Sequential Evaluation Process**

2       The Commissioner has established a five-step sequential evaluation process for determining

3  whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the claimant is

4  engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b),

5  416.920(b).  If he is not, the decision maker proceeds to step two, at which point the decision maker

6  determines whether the claimant has a medically severe impairment or combination of impairments.

7  20 C.F.R. §§ 404.1520(c), 416.920(c).

8       If a claimant does not have a severe impairment or combination of impairments, the disability

9  claim is denied.  If the impairment is severe, the evaluation proceeds to step three, which requires the

10  decision maker to compare claimant's impairment with a number of listed impairments acknowledged

11  by the Commissioner to be so severe as to preclude substantial gainful activity.   20 C.F.R.

12  §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If the claimant's impairment meets

13  or equals one of the listed impairments, the claimant conclusively is presumed to be disabled.  If the

14  impairment is not one conclusively presumed to be disabling, the evaluation proceeds to step four, at

15  which point it must be determined whether the impairment prevents the claimant from performing past

16  work.  If claimant is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e),

17  416.920(e).  If claimant cannot perform this work, the fifth and final step in the process determines

18  whether he is able to perform other work in the national economy in view of his age, education and work

19  experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See Bowen v. Yuckert, 482 U.S. 137 (1987).

20       The initial burden of proof rests upon a claimant to establish a prima facie case of entitlement

21  to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  In terms of the five step

22  sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant

23  as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant

24  to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden

25  at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original).  The

26  initial burden is met once a claimant establishes that a physical or mental impairment prevents him from

27  engaging in his previous occupation.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).  The burden

28  then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful

7

activity and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform.  Kail, 722 F.2d at 1498.

## ADMINISTRATIVE FINDINGS

At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since her alleged onset date of May 4, 2002.  (AR 18, 24).  At step two, the ALJ determined that Claimant suffers from anxiety and back pain, impairments that he considered severe under 20 C.F.R. §§ 404.1520(c) and 416.920(b).  (AR 19, 24).  At step three, the ALJ found that Claimant's impairments did not meet or equal one of the list impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (AR 19, 24).  The ALJ then discussed in detail the evidence upon which he relied in assessing Claimant's residual functional capacity ("RFC") and lack of credibility.  (AR 19-22).  At step four, the ALJ found that Claimant's RFC did not enable her to perform her past, relevant work.  (AR 24).  After concluding that Claimant was a younger individual with "more than a high school (or high school equivalent) education," and based on the testimony of the VE, the ALJ found, at step five, that there were a significant number of jobs classified as light work that Claimant could perform.  (AR 22-25). ALJ Thompson, therefore, found Claimant was not disabled and, therefore, ineligible for benefits under Titles II and XVI of the Act.  (AR 25).

## ISSUES

Plaintiff argues that the Commissioner's decision is based on an improper application of law and is not supported by substantial evidence.  Specifically, she argues that:

A.   The ALJ did not consider all of the record evidence when he determined Plaintiff's RFC;

B.   The ALJ rejected Plaintiff's testimony without providing sufficient explanations for finding it not entirely credible.  (Doc. 18).

This Court must uphold the Commissioner's determination that a claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A.  ALJ's Improper Determination of Plaintiff's RFC**

Plaintiff contends that the ALJ erroneously failed to consider the record as a whole, relying

1  instead only on evidence that would support his findings, when he determined her RFC. (Doc. 18, p. 5).

2  Plaintiff first asserts that the ALJ relied on the report of examining consultative psychologist Gregory

3  Fields, Ph.D., to the extent it supported his findings, ignoring Dr. Fields' findings that she could not

4  withstand the stresses of the workday. (Id.). Plaintiff further avers that, in determining her RFC, the

5  ALJ relied on two reports by DDS physicians, but ignored a third one.[4] (Id.). Plaintiff further asserts

6  that the ALJ not only ignored all of the experts' reports, but, with respect to those upon which he relied,

7  he ignored sections that supported her allegations. (Id.). In addition, Plaintiff argues that the ALJ erred

8  when he failed to consider her Global Assessment of Functioning ("GAF") of 40, and misconstrued as

9  definitive the remarks of Dr. Gupta, Plaintiff's treating physician, that she could return to work without

10  clarifying whether Dr. Gupta intended that statement to be limited temporally and with the understanding

11  that it did not take into account an increase in the severity of her impairments. (Id. at 5-6).

12  　　　Under Social Security Ruling 98-6p[5] and pertinent regulations,

13  　　　RFC is the individual's maximum remaining ability to do sustained work activities in an
       ordinary work setting on a regular and continuing basis, and the RFC assessment must
14     include a discussion of the individual's abilities on that basis. A "regular and continuing
       basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does
15     not represent the least an individual can do despite his or her limitations or restrictions,
       but the most. RFC is assessed by adjudicators at each level of the administrative review
16     process based on all of the relevant evidence in the case record, including information
       about the individual's symptoms and any "medical source statements" – i.e., opinions
17     about what the individual can still do despite his or her impairment(s) – submitted by an
       individual's treating source or other acceptable medical sources.

18  SR 98-6p; see 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.

19  　　　In accordance with the above, the Ninth Circuit has held that, when an ALJ determines a

20  claimant's RFC, he must consider all of the relevant evidence, including, but not limited to, medical

21  records, consultative reports ordered by the Commissioner, and subjective statements concerning

25  　　[4] According to Plaintiff, the ALJ relied on a December 12, 2002 psychiatric review technique form completed
26  by Dr. Gertrudis C. Agcaoili (exh. 4F), but ignored the underlying December 12, 2002, mental RFC assessment prepared
    by Dr. Agcaoili (exh. 3F), and also relied on a March 12, 2003 physical RFC assessment (exh. 7F).

27  　　[5] Social Security Rulings are accorded deference because they constitute the Commissioner's interpretation of
    the agency's regulations. They do not, however, have the full force and effect of the law. Ukolov v Barnhart, 420 F.3d
28  1002, 1005 n.2 (9th Cir. 2005).

1    symptoms and pain, to the extent that the ALJ finds the latter credible.[6] Id.; Robbins v. Social Security

2    Admin., 466 F.3d 880, 883 (9th Cir. 2006).  "Acceptable medical sources" include licensed physicians

3    and licensed or certified psychologists.  20 C.F.R. §§ 404.1513, 416.913.  The ALJ, however, need not

4    accept a conclusory opinion from an acceptable medical source, even if rendered by a treating physician,

5    if the opinion is unsupported by clinical findings.   Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th

6    Cir.2001); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).

7            In the instant case, the ALJ discussed in detail the record evidence upon which he based his RFC

8    finding.  (AR 19-23).[7]  ALJ Thompson (1) summarized Plaintiff's testimony, (2) discussed the medical

9    records obtained from treating physician Dr. Brij Gupta, (3) mentioned Plaintiff's self-referral for

10   mental-health treatment, (3) addressed in detail psychologist Gregory Fields, Ph.D, consultative report,

11   which he found consistent with the medical evidence, (4) discussed why he accorded less weight to the

12   consultative report and physical assessment prepared by Suzanne Stone, M.D. and more to the opinion

13   of a DDS physician, (5) stated that he gave substantial weight to the opinion of a DDS psychiatrist (Dr.

14   Gertrudis C. Agcaoili) due to its consistency with the medical evidence, (6) noted the lack of diagnostic

15   tests ordered to assess Plaintiff's back problems and fibromyalgia, and (7) used the applicable

16   regulations to evaluate her mental impairments.  (AR 19-22).  The ALJ concluded, based on all of the

17   evidence,

18          that the claimant has moderate restrictions in activities of daily living, moderate
            difficulties maintaining social functioning, and moderate difficulties in maintaining in
19          concentration, persistence, or pace and there is insufficient evidence that he [sic] has ever
            had an episode of decompression.  I have taken these findings into account by restricting
20          the claimant to unskilled work with limited contact with the public and with co-workers.

21   (AR 22).  The ALJ then determined that Plaintiff retained the RFC to lift/carry 20 pounds occasionally,

22   ten pounds frequently; sit, stand, and walk for six hours in an eight hour workday, and occasionally bend,

23   stoop, twist, squat, kneel, and crawl.  The ALJ added the following restrictions: Plaintifff should avoid

24   climbing ladders or scaffolding, heights, and hazardous, moving machinery.  In addition, she was limited

25

26   _____

          [6] See Section B for a discussion of the ALJ's findings concerning Plaintiff's credibility.
27
          [7] These pages include the ALJ's assessment of Claimant's credibility.  (AR 21).  That portion of his decision
28   will be addressed in Section B.

1   to "relatively restricted contact with the general public and with co-workers [and] can perform simple,
2   routine, repetitive tasks with one and two step processing." (AR 22).

3       As an initial matter, at least two of Plaintiff's arguments can be discarded without further
4   discussion. First, Plaintiff contends that the ALJ did not consider the portion of Dr. Fields' report in
5   which the latter found that she could not "handle the stress of the work day." (Doc. 18, p. 5). Dr. Fields,
6   however, did not state this anywhere in his report, and Plaintiff's citation is not to Dr. Fields's report,
7   but to an RFC assessment by DDS psychiatrist Gertrudis C. Agcaoili. (Id.; see AR 161-68). In addition,
8   Plaintiff's assertion that the ALJ's failure to consider her GAF score lacks merit because (1) the ALJ was
9   not obligated to utilize the GAF score because it was reported by a marriage and family therapist, whose
10  credentials are unknown but does not appear to be  an "acceptable medical source,"  see 20 C.F.R.
11  §§ 404.1513, 416.913, SSR 96-8p, (AR 210); and (2) an ALJ need not rely on a GAF score when
12  determining whether an individual is disabled. See Howard v. Comm'r of Social Security, 276 F.3d 235,
13  241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the
14  RFC, it is not essential to the RFC's accuracy."); Wilkins v. Barnhart, No. 02-4302, 2003 WL
15  21462579,*4 (7th Cir. June 20, 2003) (stating that GAF scores are used to make treatment decisions, and
16  neither case law nor regulations require the ALJ to determine extent of claimant's disability based
17  entirely on a GAF score).

18      Nonetheless, a review of the entire record reveals that substantial evidence supports the ALJ's
19  RFC determination, and that the ALJ did not commit legal error. First, the ALJ properly evaluated
20  Plaintiff's impairments as reported by her treating physician, Dr. Brij Gupta. Dr. Gupta treated Plaintiff
21  for her May 2002 work-related back injury, which was diagnosed as a lumbar back strain. (AR 157-160).
22  Dr. Gupta's records require no clarification regarding whether he deemed her able to work following this
23  injury, as he noted on June 5, 2002, that she would be off of work until June 26, 2002, and following a
24  February 6, 2003, evaluation, specifically wrote "okay to work" and "released to work." (AR 158, 244).
25  In addition, although Dr. Gupta started treating Plaintiff for depression in 1999 after her divorce, he
26  never referred her for mental health counseling, (see generally AR 155-60, 238-61). It is noteworthy
27  that, when Plaintiff decided to seek therapy, her primary complaint was that her children did not listen
28  to her and she lacked money, and she made a point of telling the counselor that she was applying for SSI

11

1   benefits, but she did not follow-up after completing the intake paperwork. (AR 205-211); see, e.g., 20

2   C.F.R. §§ 404.1530, 426.930; Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (noncompliance with

3   medical care cast doubt on a claimant's subjective complaints). Nor did the ALJ err in discounting Dr.

4   Gupta's fibromyalgia diagnosis, reported in September 2002, or its effect on Plaintiff's ability to work,

5   given that the diagnosis itself was conclusory and not supported by any diagnostic tests or clinical

6   records, and he released her to work months after he made the diagnosis. Tonapetyan, 242 F.3d at 1149;

7   Magallanes, 881 F.2d at 751; (AR 20, 156, 244). Finally, the record contains no indication that Plaintiff

8   sought treatment for, or complained of problems relating to, her swollen and knotted legs, although Dr.

9   Gupta treated her for swollen ankles, which he attributed to an allergic reaction to her psychotropic

10   medication. (AR 241-243).

11         The examining and non-examining consultative reports and assessments also support the ALJ's

12   RFC determination. Regarding Plaintiff's mental health, the report of psychologist Gregory Fields, an

13   examining consultant, found that Plaintiff suffered from an anxiety disorder, which would impair her

14   ability to deal with the public, co-workers, and supervisors, but that she was capable of performing one

15   and two step tasks subject to her self-reported physical ailments. (AR 161-164). Dr. Fields' evaluation

16   conforms with a detailed RFC assessment by non-examining DDS physician Gertrudis Agcaoili, who

17   reported that Plaintiff had moderate limitations with respect to her ability to work due to her anxiety

18   disorder, but concluded that she was "capable of performing SRT [simple routine tasks] with decreased

19   public contact within physical tolerances." (AR 167-183). The ALJ incorporated restrictions into his

20   RFC determination that reflect Plaintiff's moderate limitations due to her anxiety disorder. (AR 22).

21         With respect to Plaintiff's physical RFC, examining consultant Suzanne Stone, M.D., reported

22   that her examination indicated only that Plaintiff's had a mildly limited range of motion in her back,

23   which Dr. Stone attributed to stiffness. (AR 187). Dr. Stone's RFC assessment imposed only mild

24   exertional restrictions on climbing, stooping, crouching, crawling, balancing, kneeling pushing, and

25   pulling, and stated that Plaintiff could lift 20-pounds frequently and 30-pounds occasionally, which was

26   a less restrictive assessment than that which the ALJ determined. (Compare AR 187 with AR 22). A

27   physical RFC assessment prepared by DDS physician Shepard Fontaine in January 2003 reported

28   Plaintiff's limitations were more restrictive than those found by Dr. Stone. (AR 188-195). The ALJ's

1    RFC determination imposed even more restrictions than did Dr. Fontaine.  (AR 22).

2         Given the treatment records, which reflect no restrictions on Plaintiff's ability to work, and the

3    various consultants' assessments and reports, which impose varying limitations both mentally and

4    physically, but overall support the ALJ's RFC determination as discussed above, the undersigned finds

5    that the ALJ did not err in determining Plaintiff's RFC, which is supported by substantial evidence.

6    **B.    Plaintiff's Testimony**

7         Plaintiff asserts that the ALJ committed legal error when he found her testimony not entirely

8    credible without detailing specific, adequate, and convincing reasons for discounting her subjective

9    statements.  (Doc. 18, pp. 6-7).  She further contends that the rationale that the ALJ provided is subject

10   to differing interpretations and that he primarily relied on an unauthenticated, dated document allegedly

11   evidencing a parole violation, which is pure hearsay.  (Id. at 7).  The undersigned disagrees.

12        A two step analysis applies at the administrative level when considering a claimant's subjective

13   credibility.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce

14   objective medical evidence of an impairment and show that the impairment could reasonably be

15   expected to produce some degree of symptom.  Id. at 1281-82.  If the claimant satisfies this test – and

16   if there is no evidence of malingering – the ALJ can reject the claimant's testimony about the severity

17   of his or her symptoms "only by offering specific, clear and convincing reasons for doing so."  Id. at

18   1281.  Such specificity is crucial so as to enable effective judicial review.  See Mersman v. Halter, 161

19   F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why

20   Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's

21   conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently

22   specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

23   to the individual's statements and reasons for that weight").

24        In assessing the claimant's credibility, the ALJ may consider, inter alia, the claimant's reputation

25   for honesty, conflicts between the claimant's testimony and her conduct, and inconsistencies between

26   her testimony and statements made to others.  Tonapetyan v. Halter, 242 F.3d 1144, 1147-1148 (9th Cir.

27   2001)(citations and quotations omitted); Light v. Comm'r of Social Security, 119 F.3d 789, 792 (9th Cir.

28   1997).  The ALJ also may consider the extent to which claimant sought treatment for her impairments

13

1   and her willingness to try different types of treatment.   SSR 96-7p.

2          Here, the ALJ first set forth a synopsis of Plaintiff's medical history, (see Section A), from which

3   he concluded that her impairments were not as disabling as she testified, given the discrepancies between

4   her statements and the record evidence.  (AR 20-21).  The ALJ noted, for example, that Plaintiff told Dr.

5   Fields during a consultative examination that she lived alone, prepared her meals, did her laundry, and

6   sometimes walked to the grocery store.  (AR 20, see AR 162).  In addition, Dr. Fields reported that

7   Plaintiff "describes herself as independent in basic activities of daily living."  (AR 162).  Plaintiff also

8   told Dr. Stone that she walked one hour daily for exercise.  (AR 186).  The ALJ found that Plaintiff's

9   medical history, along with the amount of work involved in her daily job of looking after her young

10  grandchildren, cast doubt on the credibility of her testimony.  (AR 21).

11         The ALJ further found Plaintiff's testimony not credible because she denied any history of

12  alcohol or drug problems, which directly contradicted statements in her record that she had a long history

13  of drug abuse and had smoked marijuana in early 2003.  (AR 21, see AR 205-07, 211).  In addition, the

14  ALJ opined that, given her recent conviction for welfare fraud, it was possible that Plaintiff also would

15  attempt to fraudulent obtain disability benefits.  (AR 21).  Plaintiff is correct that evidence of her

16  conviction was, in fact, hearsay, given that she did not testify to it and it only was referred to in the

17  record; however, it was included in documents from three separate sources, all of whom obtained their

18  information from Plaintiff.  (See AR 162 (Dr. Fields' consultative report); AR 211 (counselor's report

19  from Stanislaus County Behavioral Health & Recovery Services[8]); AR 255 (Dr. Gupta's record dated

20  June 1, 2001)).  The ALJ may consider the claimant's reputation for honesty when assessing her

21  credibility.  Light, 119 F.3d at 792.  There is no error in the ALJ evaluating the extent to which Plaintiff

22  has a reputation as a truthful individual based on a recent conviction for fraud.  Id.; (AR 21).  Moreover,

23  hearsay testimony is not precluded except with respect to medical evidence, and then only under certain,

24  limited circumstances.  See Richardson v. Perales, 402 U.S. 389, 402 (1971).

25         Based on the foregoing, the undersigned finds that ALJ Thompson sufficiently articulated a

26  number of inconsistencies justifying his decision to discredit Plaintiff's subjective complaints (and her

27

28         [8]  This is the facility where Plaintiff sought mental health treatment in 2003.  (AR 205-11).

1    corresponding view of her exertional capacity), and that her inconsistencies and reputation for

2    dishonesty, based on her fraud conviction, were supported by substantial evidence in the record.  See

3    Tonapetyan, 242 F.3d at 1147-48; Light, 119 F.3d at 792 ("the ALJ may consider [claimant's] reputation

4    for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his

5    daily activities, his work record, and testimony from physicians and third parties concerning the nature,

6    severity, and effect of the symptoms of which he complains"); Brawner v. Sec'y of Health and Human

7    Serv., 839 F.2d 432, 433 (9th Cir. 1988) (upon giving "great weight to [the] ALJ's credibility

8    assessment," the court concluded that it was supported by substantial evidence).  The Court concludes

9    that ALJ Thompson cited clear and convincing reasons for rejecting Plaintiff's subjective complaints,

10    and that his reasons were supported by substantial evidence and were sufficiently specific to allow this

11    Court to conclude that ALJ Thompson rejected Plaintiff's testimony onpermissible grounds and did not

12    arbitrarily discredit Plaintiff's testimony.

13    **CONCLUSION AND RECOMMENDATIONS**

14         For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

15    properly concluded Plaintiff is not disabled.  This Court further finds the ALJ's decision is supported

16    by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this

17    Court RECOMMENDS:

18         1.      That Plaintiff's Social Security complaint be DENIED; and

19         2.      That judgment be ENTERED for Defendant Michael J. Astrue and against Plaintiff

20              Beverly Daniel.

21         These Findings and Recommendations are submitted to the United States District Judge assigned

22    to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than

23    fifteen (15) days after service of these Finding and Recommendations, any party may file written

24    objections to these Findings and Recommendations with the Court and serve a copy on all parties. Such

25    document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

26    Responses to objections shall be filed and served no later than fifteen (15) days after filing of the

27    objections.  The District Judge will review the Magistrate Judge's findings and recommendations,

28    pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the

1  specified time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153

2  (9th Cir. 1991).

3

4  IT IS SO ORDERED.

5  Dated:   **August 9, 2007**                                          **/s/ Theresa A. Goldner**
                                                                    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28